81 P.2d 58

**WALTOM v. CITY OF PORTALES et al.
(WILLMAN, Intervener).**

No. 4327.

Supreme Court of New Mexico.

March 7, 1938.

Rehearing Denied July 15, 1938.

T. E. Mears and T. E. Mears, Jr., both of Portales, and J. M. Hervey, of Roswell, for plaintiff.

E. T. Hensley, Jr., of Portales, and W. A. Keleher and Theo. E. Jones, both of Albuquerque, for defendant City of Portales.

Rodey & Dickason, of Albuquerque, for intervener.

Otto Smith, of Clovis, for paving bondholders.

BICKLEY, Justice.

Plaintiff sued to quiet title to real estate, claiming title thereto by virtue of a tax deed issued under the provisions of chapter 27, L.1934, Sp.Sess. The defendant, City of Portales, asserted a sewer assessment lien created in 1926, and a paving lien created in 1930. The decree of the district court held that the tax deed extinguished the paving lien but not the sewer lien; the disparity in the conclusions being due to the view that the paving lien was created subsequent to a supposed repeal of the statute that saved the sewer lien. Whether the learned judge below was correct in these conclusions presents the substantial question for our decision.

We assume that prior to the enactment of chapter 133, L.1923, and chapter 118, L. 1929, all liens on real property were subordinate to liens for general taxes. Chapter 133, L.1923, relates to bond issues by municipalities to pay the cost of special assessments. After declaring in Section 1, section 90-1701, N.M.S.A.1929, how the claims of liens of the special assessments shall be made out, signed, attested and recorded, it is declared that such liens "shall be superior to all other liens except the lien for general taxes, but the sale of any such lot or parcel of land for general taxes shall not relieve such lot or parcel of land from such assessment or the lien therefor."

Chapter 118, L.1929, amends existing statutes relating to improvement of streets in municipalities. By Section 5 of the amendatory act, section 90-1217, N.M.S.A. 1929, section 3670 of the 1915 Code, as amended by Section 4, c. 152, L.1919, was amended in several particulars; the pertinent amendment being as follows: "Which [lien] shall be on a parity with the tax lien of general taxes, and no sale of such property to enforce any general tax or other lien shall extinguish the perpetual lien of such assessment."

The language used is so clear and unambiguous that we are not left in doubt that it was the intention of the Legislature to elevate special assessment liens to a rank of equal dignity with liens for general taxes. Plaintiff does not contend otherwise. His attacks upon these statutes are that they are invalid and that they were re-

pealed by the statute controlling the tax sale eventuating in the acquisition of tax title by plaintiff. The claim of invalidity is based on the contention that the statutes offend against article 4, § 24, of our Constitution, which forbids the enactment of special or local laws in a number of cases, and against article 4, § 32, of the Constitution, which forbids the release, exchange, or diminution of any obligation or liability owed by any person or corporation to the state or a municipal corporation, except by payment or by a proper judicial proceeding. An examination of these statutes convinces us that they are not local or special laws the enactment of which offends article 4, § 24, although they deal with a particular and special subject. Plaintiff's contention that these enactments are violative of article 4, § 32 of the Constitution, must be ruled against him. In State v. Montoya, 32 N.M. 314, 255 P. 634, it was held that this section of the Constitution did not prohibit the legislative discharge of the lien for general taxes. If the Legislature has the power to discharge the lien for general taxes, surely it would have the power to waive the superiority of the lien thereof over other liens; and in Gutierrez v. Middle Rio Grande Consv. District, 34 N.M. 346, 282 P. 1, 70 A.L.R. 1261, it was held that a statute somewhat analogous to those now under consideration, providing for the survival of conservancy assessments upon a tax sale, was not repugnant to this provision of our Constitution.

Plaintiff also complains of the novelty of these statutes. Being novel would not render them invalid, but since the purpose of the statutes and their reasonableness may have a bearing in our consideration of plaintiff's contention that they have been repealed, it will not be out of place to consider briefly the departure manifested by these enactments from the public policy theretofore existing.

 While these statutes of 1923 and 1929 were novel here, the same problems had theretofore been confronted elsewhere and disposed of in a similar way. For example, see Chapter 200, Laws of Minnesota 1905, Mason's Minn.St.1927, § 2192. This statute declared that assessments upon property imposed by municipalities for local improvements shall be of "equal rank" with the lien of the state for taxes which had been levied upon said property, "and a sale or perfecting title under either [lien] shall not bar or extinguish the other." This statute was before the Supreme Court of Minnesota a number of times, and their decisions point the way for a solution of the problems which may hereafter arise in working out situations resulting from an apparent incompleteness of our statutes. See Gould v. St. Paul, 1910, 110 Minn. 324, 125 N.W. 273; Smith v. St. Paul, 1911, 116 Minn. 44, 133 N.W. 74; Gould v. St. Paul, 1913, 120 Minn. 172, 139 N.W. 293; Midway Realty Co. v. St. Paul, 1914, 124 Minn. 300, 145 N.W. 21. In the case first cited the court expressed the view that the subordination of the local assessments to state taxes which was recognized prior to 1905 had resulted in the elimination of the municipal charges by the acquisition of a state

tax lien and had enabled the landowner to enjoy the city improvement without paying for it. It was thought by the departure from the former policy to remedy these evils. Similar considerations may have moved our Legislature to a change of policy. The new policy finds support in reasonable considerations. Our cities and towns have ever since 1884 been clothed with the power to construct sewers and improve streets. Streets in municipalities were declared by the Legislature to be public property. Sometimes the city streets are used as a part of state highways and the cities and towns required to construct and maintain such portions of the public highway as run through such municipalities whether on their streets or otherwise. "El Camino Real" is a familiar illustration of this. These municipal duties may be discharged by means of revenues derived from general taxes or out of proceeds derived from the levy of special assessments against property adjacent to the improvements. To the extent of funds derived from special assessments the burden of general taxes is proportionately decreased. Such special assessments are quasi taxes and are laid to enable the discharge of some of the functions of government. The power to impose them is related to the taxing power. See City of Albuquerque v. City Electric Co., 32 N.M. 401, 258 P. 574; City of Roswell v. Levers, 38 N.M. 419, 34 P.2d 865. Furthermore, it is well settled that the theory upon which a municipality may levy assessments for such improvements is that the property charged receives a corresponding physical, material, and substantial benefit from the improvements; i. e., that the property assessed will be enhanced in value to the extent of the burden imposed. It follows that when such improvements are made the taxable resources of the state have been increased. The change of policy, therefore, so as to give equal rank to special assessment liens with liens for general taxes, and thereby make municipal improvement bonds based thereon more attractive to investors, seems reasonable and offsets the argument that taxes being essential to run the government should be fortified with a paramount lien in case of delinquency.

The contention of plaintiff that the statutes of 1923 and 1929, establishing parity of liens, have been repealed is based principally upon the language contained in Section 5 of chapter 6, L.1929, Sp.Sess., § 141-710, N.M.S.A.1929, as follows, "It is hereby declared that the lien for taxes against property is prior and superior to all other liens and encumbrances on such property," and the circumstance that section 17 of chapter 27, L.1934, Ex.Sess., says that a tax deed (plaintiff's source of title) "shall vest in the grantee, his heirs, successors, and assigns, a perfect and complete title to the premises *free and clear of all liens and incumbrances.*" (Italics ours.)

These declarations by the Legislature were only reassertions contained in a long series of statutes declaring in general terms the superiority of a lien for general taxes over other liens. If they are to be literally construed they would appear to be incon-

sistent with the statutes of 1923 and 1929 ranking special assessment liens equally with general tax liens and would supersede such earlier statutes. But since we find no express repeal of the earlier statutes, we are next to determine whether there has been a repeal by implication. We are required, therefore, to employ rules of construction.

No citation of authority is necessary to support the principle that repeals by implication are not favored. See Atchison, T. & S. F. Ry. Co. v. Town of Silver City, 40 N.M. 305, 59 P.2d 351. Also, it is equally well settled that a general statute will not be regarded as repealing by implication a statute dealing with a particular matter and of limited scope. See State ex rel. Armijo, Dist. Atty. v. Romero, 32 N.M. 178, 253 P. 20; Varney v. City of Albuquerque, 40 N.M. 90, 55 P.2d 40, 106 A.L.R. 222; Atchison, T. & S. F. Ry. Co. v. Town of Silver City, supra.

In 25 R.C.L., Statutes, § 250, it is said: "It is an old and familiar rule, which is closely related to the doctrine of ejusdem generis, and to the rule that where an act contains special provisions they must be read as exceptions to a general provision in a separate earlier or subsequent act, that where there is in the same statute a particular enactment, and also a general one which in its most comprehensive sense would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment."

At section 169 of the same text, it is said: "Repeals by implication are not favored, and will not be indulged if there is any other reasonable construction. The presumption is always against the intention to repeal where express terms are not used, and the implication, in order to be operative, must be necessary. A law is not repealed by a later enactment, if the provisions of the two laws are not irreconcilable nor necessarily inconsistent, but both may stand and be operative without repugnance to each other. Nor can one act be allowed to defeat another if, by a fair and reasonable construction, the two can be made to stand together. Although two acts are seemingly contradictory or repugnant, they are, if possible by a fair and reasonable interpretation, to be given such a construction that both may have effect."

To give to the declaration in section 5 of chapter 6 of the Special Session Laws of 1929, Comp.St.1929, § 141-710, the effect claimed for it by plaintiff would work a nullification of the intention of the parity lien statutes to preserve the rights resting upon both liens, and would probably work great hardship on those who, upon the invitation of such statutes and the municipalities of the state, had invested large sums of money in special improvement bonds. As we have heretofore pointed out, the enactments of 1923 and 1929 (establishing parity of liens) seemed based upon reasonable considerations of fair dealing. While

the state owes to its citizens the duty of collecting its revenues in order that it may discharge other duties of government, it also owes a duty to protect the rights of property of those who have supplied funds on the security of liens of quasi taxes supplied to aid in the construction of public works for the preservation of public health, safety, and to promote the general welfare, and we would be loath to hold that the Legislature had departed therefrom, unless the legislative intention to do so had been expressly announced or appeared from circumstances clear and convincing.

Our conclusion is that the statutes creating parity of liens of general taxes and the liens of special assessments have not been repealed, and that standing together the declaration in section 5 of chapter 6 of the Special Session Laws of 1929, Comp.St.1929, § 141-710, should be construed as though it stated, "It is hereby declared that the lien for taxes against property is prior and superior to all other liens and incumbrances on such property, *except liens declared by law to be on a parity with the tax lien of general taxes,*" and that the provision in section 17, chapter 27, L. 1934, Sp.Sess., relative to tax deeds should be construed as though it read, "Such deed shall vest in the grantee, his heirs, successors, and assigns, a perfect and complete title to the premises free and clear of all liens and incumbrances, *except liens declared by law to be on a* parity with the tax lien of general taxes."

Whether parity of lien statutes have retroactive effect is not decided.

It follows from all of the foregoing that the judgment and decree of the trial court must be reversed and the cause remanded, with instructions to proceed in accordance with the views herein announced, and it is so ordered.

SADLER and ZINN, JJ., concur.

HUDSPETH, C. J., dissents.

BRICE, J., did not participate.