211 P.2d 127

**ALBUQUERQUE BUS CO. v. EVERLY et al.**

No. 5214.

Supreme Court of New Mexico.

Nov. 3, 1949.

Messrs. Simms, Modrall, Seymour & Simms, Albuquerque, for appellant.

Waldo H. Rogers, City Atty., A. L. Strong, Asst. City Atty., Hugh R. Horne, Asst. City Atty., Robert W. Botts, Special Counsel, Albuquerque, for appellees.

McGHEE, Justice.

The appellees are the commissioners and clerk of the City of Albuquerque which operates under a special charter adopted under the provisions of Chapter 86, Laws of 1917, Art. 12, Ch. 14, 1941 Compilation. The city, by ordinance, granted the appellant bus company a franchise to operate busses over its streets for a period of 25 years, whereupon a petition signed by more than 10% of the adult residents of said city was filed asking that a referendum election be held on such franchise. The city then ordered such an election and directed the appellant to deposit with it the sum of $4500.00 to cover the expenses thereof. The appellant then filed an action in the District Court challenging the sufficiency of the petition on the ground that Art. 2 of Sec. 3 of its charter requiring a petition to be signed by 20% of the registered voters of the city controlled rather than the provisions of Ch. 87, Laws of 1931, Sec. 14-3501, 1941 Compilation. It also urged that the 1931 Act was invalid under Article 4, Section 16, of the Constitution, in that the title was insufficient; and further that such Act was unconstitutional for the reason it did not amend all of Sec. 90-402, but only one subsection thereof.

The trial court rendered judgment against the plaintiff-appellant.

A section of Chapter 86, Laws of 1917, now appearing as Sec. 14-1211, 1941 Compilation, reads as follows: "A city organized under the provisions of this act shall be governed by the provisions of the charter adopted pursuant to this act, and no law relating to municipalities inconsistent with the provisions of said charter shall apply to any such city."

Section 14-3501, which is the Act as amended authorizing municipalities to grant franchises to public utilities reads as follows: "All cities, towns and villages shall have the power to grant, by ordinance, franchises and privileges to private individuals, firms or corporations for the construction, or erection and operation of street car lines, water-works, electric light works and/or distribution systems, natural or artificial gas works and/or systems, and for the construction and operation of other public utilities; provided, however, that in no event shall any such franchise ordinance become effective until at least thirty (30) days after its enactment, during which time it shall be published in full in at least two (2) weekly issues of a newspaper published in such municipality; and, provided, further, that if within said period of thirty (30)

days there shall be presented to the governing body of such municipality a petition signed by bona fide adult residents of such municipality to a number equivalent to ten per cent (10%) of the population of such municipality as shown by the most recent federal census, wherein objection is made to the granting of such franchise, then it shall immediately become the duty of such governing body to submit the question of the granting of such franchise to a vote of the qualified electors of such municipality at a general or special election. If the date for the next general election for municipal officers shall be not more than ninety (90) days after the date said petition is filed, such question shall be submitted at such next general election; otherwise the governing body shall immediately call a special election, which shall be called, held, returned and canvassed in the manner provided by law for general municipal elections. If a majority of those voting on such submitted question shall be in favor of the granting of such franchise, such franchise ordinance shall thereupon take effect; but if a majority of those voting on such question shall be against the granting of such franchise, said ordinance shall not take effect and shall stand repealed, and the applicant for such franchise shall acquire no rights or privileges thereunder. The expenses of publishing the ordinance and of holding a special election shall be borne by the applicant for such franchise. All franchises granted hereunder shall comply with the provisions of subsection seventieth of section 90-402, New Mexico Statutes, Annotated, Compilation of 1929 (§ 14-1850). (Laws 1893, ch. 46, § 6; C.L.1897, § 2402 (90); Code 1915, § 3564 (90); C.S.1929, § 90-402 (90); Laws 1931, ch. 87, § 1, p. 144.)"

We begin our consideration of the first point with the knowledge that the granting of a franchise to a public utility to use the streets of a municipality is the act of the sovereign state, and that when the legislature delegates to a municipality the power to grant such a franchise the latter acts as the agent of the state. 23 Am. Jur. Sec. 11 (Franchises); City of Roswell v. Mountain States Tel. & Tel. Co., 10 Cir., 78 F.2d 379, 383. We are also mindful of the fact that this court has held that where the meaning of a grant or contract regarding any public franchise is ambiguous or doubtful it will be construed favorably to the rights of the public. State ex rel. de Burg v. Water Supply Company of Albuquerque, 19 N.M. 36, 140 P. 1059, L.R.A. 1915A, 246, Ann.Cas.1916E, 1290.

It is also the rule that provisions reserving to the people the powers of initiative and referendum are to be given a liberal construction to effectuate the policy thereby adopted. This applies equally to laws enacted to facilitate the exercise of initiative and referendum powers. 28 Am.

Jur., Sec. 7, Initiative, Referendum, and Recall, p. 155.

■ Further, a delegation of power to grant franchises is strictly construed in favor of the public and the agency to which power is delegated has such powers, and only such powers, as are expressed or necessarily implied. The agent must act in accordance with the conditions prescribed by law. 37 C.J.S., Franchises, § 14, p. 160.

The appellant places its principal reliance for a reversal under this point on the holding of this court in Atchison, Topeka & Sante Fe Ry. Co., v. Town of Silver City, 40 N.M. 305, 59 P.2d 351, where we held that the provisions of the 1921 general tax law providing that the State Tax Commission should fix the value of railroad property and certify it to the tax assessors, who should in turn place railroad property on the county tax rolls at such value, did not repeal the charter provisions of the town giving it the power to set up its own taxing system and values on property within its limits for tax purposes.

This decision was reached notwithstanding a general provision in the 1921 Act providing that the valuations fixed by the State Corporation Commission should be binding on all taxing officials. The turning point in the case seems to have been the failure of the Act to state that the property should also be placed on municipal rolls at the values fixed by the State Tax Commission so as to overcome the rule that a special act controls over a general one. We have no quarrel with the rules announced in that case but do not consider that they are authority for reversing the judgment in this case.

The appellant also relies on the cases of Waltom v. City of Portales, 42 N.M. 433, 81 P.2d 58, a case involving the priority of general tax and special improvement liens and Patten v. Corbin, 42 N.M. 561, 82 P.2d 789, one involving rights acquired under a deed for general county and state taxes and a title claimed under a sale by the town for its taxes. We have carefully considered these cases and do not consider that they furnish grounds for reversing the judgment of the trial court.

The appellant concedes that the legislature could have made the referendum terms of the 1931 Act applicable to it and other charter cities, but strenuously contends that as they were not specifically mentioned its ordinance providing that 20% of the registered voters must petition for referendum election controls, and that the referendum provisions of said Act do not apply to Aubuquerque.

■■ As above stated, when a municipality grants a franchise it is acting as the agent of the state, and absent a grant of power by the state it could, of course, grant none. This was a special Act covering a broader field in the matter of franchises

than the 1893 Act, and when the legislature included the referendum provision we are of the opinion that it was its intention to make it applicable to all municipalities whether organized under general or special laws. When the intent of the legislature can be determined it will be given effect. A. T. & S. F. Ry. Co. v. Town of Silver City, supra; Cox v. City of Albuquerque, 53 N.M. 334, 207 P.2d 1017.

We hold that the referendum provision of the 1931 Act dealing specially with popular referenda on franchise ordinances prevails over the referendum provisions of the city charter applying to ordinances generally and not franchise ordinances alone, and that the petition filed was sufficient.

The appellant next urges that Chapter 87, Laws of 1931, Section 14-3501, 1941 Comp., is in violation of Section 16, Article 4, of our Constitution. The part of that section which is material here, reads as follows: "The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws; but if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void."

The title to the Act in question reads: "An Act to Amend Sub-Section Ninetieth of Section 90-402 of The New Mexico Stat-

utes, Annotated, Compilation of 1929, relating to the granting of franchises to public utilities."

The first part of Sub-section Ninetieth reads as follows: "All cities, towns and villages shall have the power to grant, by ordinance, franchises and privileges to private individuals, firms or corporations for the construction, or erection and operation of street car lines, water works, electric light works and/or distribution systems, natural or artificial gas works and/or systems, and for the construction and operation of other public utilities; * * *."

This is the substance of Section 6, Chapter 46, Laws of 1893. It is codified in the Compiled Laws of 1897 as Sub-section Ninetieth of Section 2402, under the heading "powers of Municipal Corporations." The same situation appears in the 1929 Statutes Annotated where it appears as Sub-Section Ninetieth under Section. 90-402. The 1931 Act made the first reference to a referendum.

It is stated in State v. Ingalls, 18 N.M. 211, 218, 135 P. 86, that the constitutional provision relating to titles to legislative acts is to be liberally construed, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted; and that it is primarily for the Legislature to determine whether the title of an Act shall be broad and general or narrow and restricted.

The sufficiency of the title to a legislative act was questioned in State v. Gomez, 34 N.M. 250, 280 P. 251, and in that case Mr. Justice Simms collected all of the New Mexico authorities on the point and then made the following statement which we approve: "Each case must be decided on its own set of facts and circumstances. There are certain considerations, however, which the courts should always keep in mind. To the legislative branch of our government is committed the drafting of statutes. Courts should be slow to interfere by pronouncing the work of the Legislature insufficient. It often happens that one person would entitle the same act in a different way from another. To some minds, the title of an act should be so definite and nice in its definitions and distinctions as to be an index of the act itself; to others, this is unnecessary, and a more general and sweeping treatment of the subject is all that is required. We can all agree, however, on the soundness of the constitutional inhibition against surprises concealed or 'joker' provisions in bills which might deceive both the law makers and the general public."

■ The title to the 1931 Act, supra, stated that the Act relating to franchises was being amended, and certainly the members of the legislature must have known that conditions on which they could be granted would be stated in the act. The provision for a referendum election is nothing more than a condition under which a municipality might grant a franchise to a public utility.

We hold that the title to the bill meets the constitutional provision above set out.

■ The appellant next says that the 1931 Act is unconstitutional for the reason that all of the sections enumerating the various powers of cities were not set out as a part of the Act when the legislature amended the one as to franchises and provided for a referendum election. In other words, that there was not sufficient compliance with Sec. 16, Article 4, of the New Mexico Constitution.

It is true that the various powers of cities have been carried as sub-sections in the various codifications and compilations until they were set out as separate sections in the 1941 Compilation, but they are to all intent different sections, many granting entirely different and unrelated powers, and the right to amend them by simple amendment of the subsection has never before been challenged, so far as our reports disclose. We remind the appellant that a rose is as sweet by any other name. The object of the constitutional provision is to require the Act, as amended, to be in one bill so that the public and the legislators will be able to form a competent opinion on the merits of the proposed change. The various powers appearing in more than ninety so-called subsections above referred to are

the result of many years · of amendments and additions. Just what help it would be to a legislator to have the sections empowering the cities to regulate hotel runners, prevent dog fights, disorderly conduct, livestock running at large or railroads to allow their drainage systems to become clogged when considering whether the statute permitting cities to grant franchises to public utilities should be amended so as to provide for a referendum is not disclosed in the briefs, nor were we enlightened thereon at the oral argument.

The only result of re-enacting all of these powers of a city would be to confuse the legislators and enrich the printers at the expense of the taxpayers. This point is also ruled against the appellant.

The judgment will be affirmed, and it is so ordered.

BRICE, C. J., and LUJAN, SADLER, and COMPTON, JJ., concur.