474 P.2d 499

**BUREAU OF REVENUE of the State of New Mexico, Plaintiff-Appellant,**

v.

**DALE J. BELLAMAH CORPORATION and Dale Bellamah Equipment Corporation, Defendants-Appellees.**

No. 9028.

Supreme Court of New Mexico.

Aug. 3, 1970.

Rehearing Denied Sept. 29, 1970.

James A. Maloney, Atty. Gen., Gary O. O'Dowd, Deputy Atty. Gen., Richard J. Smith, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

J. Victor Pongetti, Albuquerque, for defendants-appellees.

## OPINION

WATSON, Justice.

The Bureau of Revenue of the State of New Mexico brought suit against Dale J. Bellamah Corporation and Dale Bellamah Equipment Corporation to recover tax assessments due under the Emergency School Tax Act (§§ 72–16–1 through 72–16–47, N.M.S.A., 1953 Comp. [since repealed]) for the period from November 1, 1959 to December 15, 1964, on gross receipts from management and engineering services and from equipment rental. The trial court granted defendants' motion for summary judgment on the ground that the action was barred by the applicable statute of limitations (§ 72–21–25, N.M.S.A., 1953 Comp.). This statute was introduced as § 25 of House Bill No. 119 during the 1959 session of the legislature, and after adoption appeared as ch. 54, § 25, N.M.S.L.1959. It reads as follows:

"Section 25. LIMITATION OF ACTIONS.—No action or proceeding may be brought to collect any tax due under this Oil and Gas Emergency School Tax Act *or under Sections 72–16–1 through 72–16–47, inclusive, New Mexico Statutes Annotated, 1953 Compilation, as amended, or House Bill No. 10, 24th Legislature, (being Laws 1959),* after five years from the time that such tax became due." (Emphasis added.)

It is appellant Bureau of Revenue's contention that the emphasized portion of the above-quoted section is unconstitutional, being in conflict with N.M.Const. art. IV, § 16. The relevant part of this section reads as follows:

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws; but if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void. * * *"

The title to House Bill 119 (ch. 54, N.M. S.L. 1959), which is in question, reads as follows:

"AN ACT RELATING TO TAXATION; IMPOSING A PRIVILEGE TAX ON PERSONS IN THE BUSINESS OF SEVERING OIL, NATURAL GAS AND LIQUID HYDROCARBON FROM THE SOIL; PROVIDING FOR THE COLLECTION AND ADMINISTRATION THEREOF; CREATING A FUND; PROVIDING FOR REFUND, PAYMENT

UNDER PROTEST AND PENALTIES; AMENDING SECTION 2, HOUSE BILL NO. 10, 24th LEGISLATURE (BEING LAWS 1959) AND SECTION 72–16–15 NEW MEXICO STATUTES ANNOTATED 1953 COMPILATION (BEING HOUSE BILL NO. 10, 24TH LEGISLATURE (LAWS 1959))."

▮ The question we must answer is whether the subject of the emphasized portion of § 25, supra (§ 72–21–25, supra), is sufficiently expressed in the title to House Bill 119 to meet constitutional requirements. As early as 1913, in State v. Ingalls, 18 N.M. 211, 135 P. 1177 (1913), this court set forth the test to be applied in adjudging an alleged violation of N.M. Const. art. IV, § 16, supra. There, the court said:

"In our opinion, the true test of the validity of a statute under this constitutional provision is: Does the title fairly give such reasonable notice of the subject-matter of the statute itself as to prevent the mischief intended to be guarded against?" 18 N.M. at 219, 135 P. at 1178.

The mischief to be prevented was hodge-podge or log-rolling legislation, surprise or fraud on the legislature, or not fairly apprising the people of the subjects of legislation so that they would have no opportunity to be heard on the subject. State v. Thomson, 79 N.M. 748, 449 P.2d 656 (1969); State v. Ingalls, supra. In applying this test, every presumption is indulged in favor of the validity of the act. In re Estate of Welch, 80 N.M. 448, 457 P.2d 380 (1969), Silver City Consol. Sch. Dist. No. 1 v. Board of Regents, 75 N.M. 106, 401 P.2d 95 (1965). Since each case wherein the sufficiency of the title to a legislative act is questioned must be decided on its own set of facts and circumstances, Albuquerque Bus Co. v. Everly, 53 N.M. 460, 211 P.2d 127 (1949); State v. Gomez, 34 N.M. 250, 280 P. 251 (1929), we must carefully examine the history of the statutes in question and closely examine the titles and bodies thereof.

On February 13, 1959, the 24th Legislature of the State of New Mexico passed House Bill 10, which appeared in our session laws as ch. 5, N.M.S.L.1959. This bill rewrote the existing Emergency School Tax Act, which had appeared as §§ 72–16–1 to 72–16–5, 72–16–7 to 72–16–46, N.M.S.A., 1953 Comp., as published in the original, but now superseded, Volume 10 of the 1953 Compilation. Section 2 of this act placed the assessment on gross receipts of extractors of natural products (except coal) including producers of oil and gas, and § 18 (which rewrote § 72–16–15, N.M.S.A., 1953 Comp.) specifically exempted the receipts from certain other sources, but did not exempt receipts from producers of oil and gas.

On March 12, 1959, the 24th Legislature passed House Bill 119 (ch. 54, N.M.S.L. 1959, supra). The Act declared it was to be cited as the "Oil and Gas Emergency School Tax Act," and its declared purpose and intent was to provide for the separate collection and administration of the privilege tax from persons engaged in the business of severing oil, natural gas, and liquid hydrocarbon and to make inapplicable to such persons the emergency school tax legislation then in existence. To do this it was necessary for the legislature to amend those sections of House Bill 10, passed less than 30 days before, as they affected persons engaged in oil and gas production. This required the amendment of § 2 of House Bill 10, which levied the tax on all natural resources, by the elimination therefrom of the oil and gas producers. It also necessitated the addition to the specific exemptions section (18) of the Emergency School Tax Act which, as we said above, was a rewrite of § 72–16–15, supra, of the gross receipts of the oil and gas producers.

It would appear that the title to House Bill 119 included all of these things, although it is somewhat inconsistent in indicating an amendment to § 2 of House

Bill 10 and then referring to § 72-16-15, supra, instead of § 18 of House Bill 10 which had repealed and rewritten this section. However, the Act itself went further, and by § 25, above quoted, attempted to place a five-year limitation on the collection of taxes under both the new Oil and Gas Emergency School Tax Act (House Bill 119) and the Emergency School Tax Act (House Bill 10), which covered the gross receipts from other sources.

Does the title to House Bill 119 so tend to mislead as to create the mischief to be guarded against? In State ex rel. Salazar v. Humble Oil & Refining Co., 55 N.M. 395, 234 P.2d 339 (1951), we approved and quoted from Taylor v. Frohmiller, 52 Ariz. 211, 79 P.2d 961 (1938). There the title to the act read: "An Act Relating to Unemployment Compensation, and Amending Sections 3, 4, 5, 6, 7, 12, 18, 19, and 22, Chapter 13, Session Laws of 1936, First Special Session." Section 10 of Chapter 13 was also amended, by adding to it a sentence including a salary for the Unemployment Compensation Commissioners. The Arizona Court said:

> "* * * Had the title of the act stopped at the first comma, it would have been broad in its scope, and one who read the title would have been advised thereby that any matter relating to unemployment compensation might be found in the body of the act. But the title further states that it is amendatory of certain named sections of a certain specified act. *We think the natural reaction of one who read the title would be that the only portions of chapter 13 which were to be amended were the particular sections set forth in the title of the act, and that he would be led to believe that any amendments to be made to chapter 13 contained nothing which was not germane to the matters dealt with in the sections named.* * * *" (Emphasis added.) 79 P.2d at 964.

See also I Cooley, Constitutional Limitations, 308; 310 (8th ed. 1927), and State v. Pelosi, 68 Ariz. 51, 199 P.2d 125 (1948).

We simply cannot say that the natural reaction to a reading of the entire title to House Bill 119 would be that a limitation on the collection of the privilege tax on businesses other than oil and gas producers would be included in the body of the act. Here, as in Frohmiller, if the title had stated only "An Act Relating to Taxation," it would have been broad in scope, and perhaps alerted its readers to anticipate anything in that field, but we cannot say that the subject embraced in the act is expressed in the title if the reader is misled. The natural reaction of the reader is to conclude that the specific references in the title limits the broad subject. Even if the entire title of House Bill 10, which is referred to, is also read, one is not alerted to the questioned limitation since neither the title nor the body of House Bill 10 provided for any such limitation on the collection of the privilege taxes there enumerated. Fowler v. Corlett, 56 N.M. 430, 244 P.2d 1122 (1952); State v. Sifford, 51 N.M. 430, 187 P.2d 540 (1947).

A time limitation on the collection of the tax may be an incident to its collection and administration and thus need not be expressed in the title. Crosthwait v. White, 55 N.M. 71, 226 P.2d 477 (1951); Albuquerque Bus Co. v. Everly, supra. But the collection and administration provided for in House Bill 119 was limited to the business of severing oil and gas only, in both the title and the body of the act. Thus the inclusion of a time limitation on the collection of a privilege tax on professional services or other matters cannot be deemed incidental to its subject. See State ex rel. Board of Education of Village of Roy v. Saint, 28 N.M. 165, 210 P. 573 (1922). Just as in State v. Humble Oil & Refining Co., supra, the title was not left in general terms, but the legislature pin-pointed its changes to §§ 2 and 18 of House Bill 10 (the latter section being referred to by its compilation section number).

We have held that where an intention to amend a specific section of a prior act is announced in the title of an amendatory act, that amendatory act must be germane-

to the subject matter of the section sought to be amended. State v. Candelaria, 28 N.M. 573, 215 P. 816 (1923). In Gallegos v. Wallace, 74 N.M. 760, 398 P.2d 982 (1964), we held that the inclusion of non-owner drivers in the provisions of the guest act was not germane to the subject which was expressly limited to owners by the title. Although the limitation on the time to bring an action to collect the oil and gas emergency school tax may be germane to "the collection and administration" of the "privilege tax on persons in the business of severing oil and natural gas * * *" the limitation on the collection of all the taxes covered under the Emergency School Tax Act (§§ 72–16–1 through 72–16–47, supra), is not germane to either § 2 or § 18 of House Bill 10, supra, nor to the collection of the oil and gas emergency school tax. See also Silver City Consol. Sch. Dist. No. 1 v. Board of Regents, supra, and State v. Miller, 33 N.M. 200, 263 P. 510 (1927).

There can be no doubt that the general subject of House Bill 119, supra, was provision for the separate administration of the privilege tax on the producers of oil and gas. This subject did not go beyond the object or purpose of the act as set forth under "Purpose of Act—Declaration of Intention" in § 3 thereof which so stated. Other than the elimination of such producers from the Emergency School Tax Act (House Bill 10), neither the title nor § 3 indicates that any other change in House Bill 10 was contemplated. We can only conclude that an attempt to include within the limitation section of House Bill 119 a provision applying to House Bill 10 was improper since such a provision was not germane to either the general subject of House Bill 119 or the express wording of its title.

Thus, pursuant to the provisions of N.M. Const. art. IV, § 16, supra, we must eliminate from the limitation provisions of House Bill 119 (ch. 54, § 25, N.M.S.L. 1959) the void provisions emphasized above, so that the section will read:

"No action or proceeding may be brought to collect any tax due under this Oil and Gas Emergency School Tax Act after five [5] years from the time that such tax became due."

The statute of limitations relied upon for granting the summary judgment being void, the cause is remanded to the trial court to reinstate the cause on its docket for further proceedings on the other issues raised by the pleadings.

It is so ordered.

COMPTON, C. J., and SISK, J., concur.